UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>SATCON TECHNOLOGY<br>CORPORATION, et al.,<br><br>Debtors | Chapter 11<br><br>Case No. 12-12869 (KG)<br>Jointly Administered<br><br>Re: D.I. 18, 50, 119, 182, 209 |

**OPPOSITION OF SECURED CREDITOR SILICON VALLEY BANK TO MOTION FOR ENTRY OF FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507**

Silicon Valley Bank ("SVB") opposes the Debtors' Motion for Entry of Final Order (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507 (the "Motion," Docket No. 18). SVB does not consent to the Debtors' further use of its cash collateral. Further, the Debtors cannot use SVB's cash collateral to fund the Carve-Out for professional fees or to fund the Debtors' recently issued request to expand the Carve-Out to include a Key Employee Incentive Plan ("KEIP")[1] without meeting the requirements of 11 U.S.C. § 506(c), which the Debtors have not done and cannot do. In this regard, any money previously paid into the escrow account maintained by the Debtors' counsel as provided in the previous interim cash collateral orders (the "Interim Orders") must be immediately released and repaid to SVB as those Interim Orders have expired, no final order has been entered, and SVB does not consent and objects to the use of those funds by the Debtors to fund the Carve-Out as originally contemplated in the Interim Orders. Thus, even if this Court approves the Debtors' use of SVB's cash collateral over its objections to fund the Debtors' day-to-day operations, the Court cannot authorize the use of that cash collateral to fund the requested Carve-Out. Finally, if the Court permits the Debtors to use the cash collateral to fund their day-

---

[1] Motion of the Debtors for Entry of an Order Approving Employee Incentive Bonus Plan and Authorizing Payments Thereunder, filed November 19, 2012 (Docket No. 188).

1

to-day operations, the Debtors' proposed Budget must be substantially reduced and that usage must be conditioned upon substantially enhanced financial and operational reporting as well as appropriate covenants to monitor the Debtors' financial performance.

## BACKGROUND FACTS

1. On October 17, 2012 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued in the possession, management, and operation of their assets, properties, and businesses in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

2. Pursuant to that certain loan arrangement by and between Satcon Technology Corporation ("Satcon Technology") and its subsidiaries, and SVB, SVB made certain advances to the Debtors in accordance with the terms of, among other documents, instruments, and agreements, that certain Amended and Restated Credit Agreement dated as April 22, 2011, as amended by a certain First Amendment to Amended and Restated Credit Agreement dated as of June 30, 2011, and as further amended by that certain Waiver and Second Amendment to Amended and Restated Credit Agreement dated as of August 9, 2011 (collectively, the "Senior Prepetition Loan Documents"). SVB asserts and the Debtors have stipulated in the Interim Orders that the amounts owed under the Senior Prepetition Loan Documents (the "Senior Secured Debt") is secured by substantially all of the assets of the Debtors, including the cash collateral. As of the Petition Date, the Debtors the Senior Secured Debt totaled the approximate amount of $14,536,165.05, plus accrued interest in the approximate amount of $88,896.89 and other fees, costs and expenses in the amount of $100,000.00; plus all other amounts as set forth in the Senior Prepetition Loan Documents; and plus post-petition interest, attorneys' fees, and other amounts.

3. Pursuant to that certain Venture Loan and Security Agreement between Satcon Technology and its Debtors subsidiaries, Satcon Power Systems, Inc. and Satcon Electronics, Inc., as borrowers, and Compass Horizon Funding Company, LLC ("CHF"), CHF agreed to make certain loans and financial accommodations in a principal amount of up to $12 million dollars, evidenced by two secured notes payable. By subsequent transfer agreements, CHF transferred (i) the secured note payable in the principal of $10,000,000.00 to Horizon Credit I LLC ("Horizon") and (ii) the secured note payable in the original principal amount of $2,000,000.00 to Velocity Venture Holdings LLC which in turn assigned such secured note payable to Velocity Venture Funding, LLC (collectively, "Velocity", and with CHF, the "Subordinated Secured Creditors"). The Subordinated Secured Creditors assert, and the Debtors have stipulated in the Interim Orders, that the amounts owed under the two secured notes payable and under all of the documents, instruments, and agreements related thereto and executed in connection therewith, are secured by substantially all of the assets of the Debtors, including the cash collateral. As of the Petition Date, the Subordinated Secured Creditors were owed the aggregate amount of $6,481,446.41 in principal, interest, fees, costs, and expenses, plus post-petition interest, attorneys' fees, and other amounts.

4. The Court considered the Debtors' Emergency Motion to Use Cash Collateral, the exhibits attached thereto, and the evidence submitted at an emergency hearing held before the Court on October 18, 2012 and entered an Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2 (the "First Interim Order," Docket No. 50).

5. The Court considered the Motion, the exhibits attached thereto, and the evidence submitted at a second interim hearing held before the Court on November 6, 2012 and entered a Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2 (the "Second Interim Order," Docket No. 119).

6. The Court considered the Motion, the exhibits attached thereto, and the evidence submitted at a third interim hearing held before the Court on November 15, 2012 and entered a Third Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2 (the "Third Interim Order," Docket No. 182). The Third Interim Order would have expired by its terms on November 29, 2012, but was extended by agreement of all interested parties, and with the approval of the Court, to Friday, December 7, 2012.

7. The Interim Orders were consensual inasmuch as the Debtors and SVB and the Subordinated Secured Creditors (collectively, the "Secured Creditors") each consented to the terms of those Orders. For the purposes of the subject matter of each of the Interim Orders, those Orders are entitled to the protection of 11 U.S.C. 364(e).

8. Pursuant to the Interim Orders, the Secured Creditors consented to a Carve-Out (as defined therein) for professional fees and expenses budgeted and incurred prior to the Termination Date (as defined therein); plus $200,000.00 for professional fees subsequent to the Termination Date; plus unpaid fees payable to the United States Trustee and the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930; plus $200,000.00 of professional fees incurred

in connection with the Debtors' ancillary Canadian bankruptcy proceedings, all conditioned upon allowance on a final basis by the appropriate court. The Interim Orders limited the Carve-Out to exclude any professional fees incurred after the Termination Date above $200,000.

9. The Interim Orders specify that until the Termination, the Debtors were authorized to deposit in a Professional Fee Account (as defined therein) maintained by the Debtors' counsel an amount equal to the line items in the approved budget under the line item for retained professionals, "<u>which amounts are part of the Carve-Out</u>." (emphasis added). As of this date, no interim fee application has been allowed by the Court, and on information and belief, none of the Carve-Out funds in the escrow account have been disbursed. The Interim Orders expressly barred any non-consensual priming liens (See, e.g., First Interim (October 18, 2012) Order at paragraph 12(h)). SVB objects to any use of any carve-out funds by the Debtors of any of the professionals, including but not limited to amounts previously deposited in the Professional Fee Account, which amounts should be promptly returned by the Debtors.

10. The Third Interim Order was entered by the Court, and with the consent of the Debtors and the Secured Creditors, on November 15, 2012, <u>after</u> the Great Wall Motion[2] had been filed by the Debtors. The Third Interim Order explicitly provides,[3] at paragraph 5(c)(iv), that no cash collateral may be used, *inter alia*, to seek to grant a third party security interest which is a priming lien, "<u>including, without limitation, in connection with a settlement or other transaction with [Great Wall]</u>".

---

[2] The "Great Wall Motion" refers to the Emergency Motion of the Debtors for Entry of an Order Authorizing (I) Entry into a Settlement with Great Wall, (II) Incurrence of Post-Petition Trade Credit, and (III) Granting of a Priming Lien to Secure Post-Petition Trade Credit, filed on November 12, 2012 (Docket No. 139).
[3] The First and Second Orders generally provide to the same effect, but the Third Interim Order is more explicit, as it was agreed upon after the Great Wall Motion had been filed.

11. On November 28, 2012 the Debtors filed their Notice of Filing of Proposed Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection (the "<u>Proposed Final Order</u>," Docket No. 209).

12. The Proposed Final Order attempts to continue the Carve-Out for professional fees, attempts to expand the Carve-Out to include the KEIP, and attempts to retroactively remove the agreed upon limitations contained in the Interim Orders, in disregard of the provisions of section 364(e) of the Bankruptcy Code, without the consent of the Secured Creditors.

13. SVB does not consent and specifically objects to the Debtors' continued use of its cash collateral and specifically objects to the Debtors' use of any of the funds placed in escrow on an interim basis. The Carve-Out was conditioned upon consent based upon all of the terms and conditions of the Interim Orders. The Debtors unilaterally rescinded their agreement to all of the terms and conditions of the Interim Orders, and therefore, SVB objects to the use of any Carve-Out funds previously placed into escrow, objects to the creation of any Carve-Out, submits that the prior Carve-Out under the Interim Orders has been terminated, and requires that the Debtors and their professionals must refund and pay to SVB all funds on deposit in the Professional Fee Account.[4]

14. SVB further asserts that it is not adequately protected for the use of any cash collateral by the Debtors for payment of professional fees and objects to the use of its cash collateral to pay those amounts.

15. On information and belief, the Debtors' current proposed budget provides for the escrow (and later payment) of professional fees and other amounts until the Termination Date in

---

[4] SVB also submits that even if the Carve-Out was somehow still in effect, it would not cover any professional fees and expenses incurred by the Debtors in connection with the Great Wall Motion or the contested use of the Secured Creditors' cash collateral. By its terms, the Carve-Out in the Interim Orders expressly excluded amounts incurred with respect to such adversarial matters.

an unlimited amount (including fees incurred in connection with the Great Wall Motion), currently estimated in the Budget at $2,102,500.00[5], which amount includes a $640,000.00 "success fee" to be paid to Senior Executives for the Great Wall Motion. However, the Budget does not include the balance of up to $960,000.00 under the proposed KEIP,[6] and does not include a $1,150,000.00 success fee to Lazard (minus certain credits for prior payments made) upon consummation of a sale of the Debtors or their assets. The post Termination carve-out provisions add another $540,000.00, plus fees owing to the United States Trustee and the Clerk for the Bankruptcy Court.[7] Thus, under the current proposed Budget and the Creditors' proposed Final Order, the proposed carve-outs could aggregate as much as $4,752,500.00 – all or substantially all for professionals, extraordinary bonuses and other payments outside the ordinary course of business.

16.    SVB is not adequately protected for the use of any cash collateral by the Debtors for payment of the foregoing amounts and objects to the use of its cash collateral to pay those amounts. In the alternative, to the extent the Court considers the foregoing to be rearguing the Court's adequate protection finding in the Great Wall Order, and provided such adequate protection finding remains in place, by definition the professionals and management seeking the Carve-Out must be the ones at the bottom of the "debt stack," behind SVB and the Subordinated Secured Creditors. They must concede, by virtue of their priming victory, that they too are of

---

[5] This calculation is based on the Debtors current proposed Budget through the week ending March 9, 2013. The Debtors have indicated that they will agree to a termination date of March 2, 2013, or earlier. If the Termination Date is March 2, 2013, or an earlier date, this amount will be reduced by $90,000.00 per week.

[6] The proposed KEIP provides for up to $1,600,000.00 of bonuses to certain Senior Executives of the Debtors, including Mr. Rhoades and Mr. Gomolak. The Debtors Motion to approve the proposed KEIP is scheduled for hearing on December 19, 2012, with an objection deadline of December 14, 2012. Although the Motion has not yet been heard by the Court, and despite the fact that the KEIP plan has not been approved, the Debtors' Proposed Order seeks to subordinate the Secured Creditors to a carve-out for the entire KEIP plan.

[7] SVB is agreeable only to a carve-out of the fees payable to the United States Trustee and the Clerk for the Bankruptcy Court.

course adequately protected. The Debtors, and arguably the professionals themselves, are estopped from now contending that they need the Carve-Out to avoid risk of nonpayment.

## ARGUMENT

17.     The Debtors may not use SVB's cash collateral unless SVB consents or the Court authorizes the use after a notice and a hearing.  11 U.S.C. §§ 363(c)(2), 1107.  When evaluating the Debtors' request to use cash collateral over a secured creditor's objection, the court "shall prohibit or condition the [use of cash collateral] as is necessary to provide adequate protection of [the secured creditor's] interest."  11 U.S.C. § 363(e); In re Sharon Steel Corp., 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993).  A non-exclusive list of examples of adequate protection is provided in 11 U.S.C. § 361 and includes periodic payments or replacement liens to the extent the use of the property results in a decrease in value of the secured creditor's interest in the property or other relief constituting the indubitable equivalent of the secured creditor's interest in the property.

18.     While SVB asserts that the Debtors have not met their burden of demonstrating adequate protection, given this Court's recent approval of the Debtors' Great Wall Motion, SVB anticipates that this Court will find that its interests are adequately protected to the extent so found in connection with the Great Wall Motion.  Nevertheless, SVB suggests that the unlimited Carve-Out for professional fees sought by the Debtors over the objection of SVB, the expansion of the Carve-Out sought by the Debtors to include funding of the KEIP, and after the deduction of the $5,000,000.00 of the Debtors' inventory which comprises a portion of SVB's collateral upon its transfer to Great Wall pursuant to the Great Wall Motion, there is not adequate protection for SVB for the use of the cash collateral requested by the Debtors.

19.     Furthermore, even if this Court determines that the Debtors' can use SVB's cash collateral to fund their day to day business operations, the Court must reject the request that SVB's cash collateral be permitted to fund the Carve-Out for payment of expenses that are not entitled to priority over SVB's claims.

20.     "Payment of administrative expenses traditionally has been the responsibility of the debtor's estate, not its secured creditors. General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.), 739 F.2d 73, 76 (2nd Cir. 1984). While a secured creditor can consent to the use of its collateral to pay administrative expenses, there is no provision of the bankruptcy code allowing for non-consensual carve-outs for professional or other fees. In re Nuclear Imaging Systems, Inc., 270 B.R. 365, 373 (E.D.Pa 2001) (recognizing the secured creditor's ability to consent to its collateral being used to pay administrative expenses). Payment of professional fees (even if they are allowed as claims of administration under Bankruptcy Code Section 503) cannot be paid from the cash collateral of a secured creditor unless (i) the secured creditor consents, or (ii) the professional can establish, under Bankruptcy Code §506(c), that the services of the professional provided a clear direct benefit to the secured creditor. In re Blackwood Associates LP, 153 F.3d 61, 68 (2nd Cir. 1998); In re 680 Fifth Ave. Assoc., 154 B.R. 38, 43 (S.D.N.Y. 1993).[8]

---

[8] SVB recognizes that certain courts outside the Third Circuit have authorized the use of cash collateral to pay professional fees on a finding that the secured creditor was adequately protected. For example, in Security Leasing Partners, LLC v. ProAlert, LLC (In re ProAlert, LLC), 314 B.R. 436 (B.A.P. 9th Cir. 2004), the Court upheld an order permitting the Debtor to use cash collateral to pay professional fees without analyzing the request under 11 U.S.C. § 506(c). That case is distinguishable as the court found that the creditor was adequately protected by the requirement that the debtor replace the funds used to pay its professional by a certain date, which will not occur here. SVB asserts that the Second Circuit opinion in In re Blackwood Assoc. and the other cases it cites are better reasoned under the present circumstances. In re Blackwood, addresses the issue of whether cash collateral can be used to pay administrative expenses junior in priority to the claim of a secured creditor without that secured creditors' consent and holds that this can only occur if the requirements of 11 U.S.C. § 506(c) are met. This analysis is most appropriate here where the funds proposed to be paid to the Carve-Out are not being replaced by the Debtors in any way or form and it is not a certainty that SVB will be over secured at the end of the case. If the Debtors are so certain that SVB will remain over secured, their professionals will be paid in full after the grant of final orders.

21. SVB does not consent to the Debtors' use of its cash collateral and does not consent to its use to fund the Carve-Out or any other carve-outs. Moreover, SVB does not consent to the Debtors' use of the funds in the Professional Fee Account to pay professional fees allowed on an interim basis as requested in the two pending Fee Applications. These fees should not be paid on an interim basis, with any payment only made after allowance of those fees by the Court on a final basis at the conclusion of these cases.

22. Without SVB's consent, the only manner in which the Debtors may seek to fund the carve-outs from SVB's collateral is by meeting the requirements of 11 U.S.C. § 506(c) by establishing that the Carve-Outs are "the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim" against the property. See Harvis Trien & Beck P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assoc. L.P., 153 F.3d 61, 68 (2nd Cir. 1998); General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.), 739 F.2d 73, 75-76 (2nd Cir. 1984). The burden of proving that the services provided a benefit to SVB is on the Debtors. Sable v. Liberty Savings Bank (In re Blue Ridge Motel Assoc.), 126 B.R. 477, 479 (W.D. Pa 1991). In analyzing a request under 11 U.S.C. §506(c), the Court "has the ability to review the proceedings in their entirety" to determine whether a benefit was conferred. Sable v. Liberty Savings Bank (In re Blue Ridge Motel Assoc.), 126 B.R. 477, 480 (W.D. Pa 1991).

23. A 506(c) surcharge cannot be made prospectively; it can only be made after the fact, in an adversary proceeding or contested matter, after a fair and full opportunity for discovery and presentation of evidence to the Court on whether specific expenses come within the scope of, and are surchargeable under, section 506(c). Such a review cannot take place before the expenses are actually incurred. The Debtors have not and cannot at this time show

that the Carve-Out funded reasonable and necessary expenses of preserving SVB' collateral for the benefit of SVB.  In fact, should SVB wind up under-secured, as SVB suggests will actually happen in these cases, it will not have been benefitted.  See  General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.), 739 F.2d 73, 75-76 (2nd Cir. 1984); Sable v. Liberty Savings Bank (In re Blue Ridge Motel Assoc.), 126 B.R. 477, 479 (W.D. Pa 1991) (a conversion to Chapter 7 and the eventual grant of relief from stay, along with declining value of the secured creditor's collateral during the case, conferred no benefit on the secured creditor and a surcharge under 11 U.S.C. §506(c) was denied).

24.    Further, as was made clear at the evidentiary hearing on the Great Wall Motion, these cases are being conducted solely for the benefit of parties other than the Secured Creditors.  There is no benefit to SVB to continue the expenditure of funds in the fashion requested by the Debtors in their proposed budget.  The purported benefit to be realized by the Debtors through the sale process that they now propose (which SVB suggests is nothing more than a very risky and speculative exercise) will be for the benefit of other parties in interest, not the Secured Creditors.

25.    As such, even if this Court is to find that SVB is adequately protected such that its cash collateral can be used to fund the day to day activities of the Debtors, the Court cannot approve the requested Carve-Out as the Debtors have not and cannot meet their burden in this regard.

26.    Finally, if the Court determines to permit the Debtors to continue to use SVB's cash collateral over the Objection of SVB, the Debtors' proposed timeline must be shortened, and the Debtors' proposed budget must be substantially reduced to include only those items actually necessary to maintain the Debtors on a "skeleton" basis until completion of the sale

process undertaken by the Debtors, and to eliminate (i) professional fees, (ii) travel expense, (iii) the KEIP, (iv) severance payments, and (v) the success fee to Lazard. Further, any use of cash collateral authorized by the Court must be conditioned upon substantially increased financial and operational reporting, to include matters such as (i) shipments and billings on a weekly basis, (ii) Great Wall's production and shipment schedule, (iii) order and fulfillment activity, and (iv) existing backlog, including purchase orders, as well as appropriate covenants to monitor the Debtors' financial performance, to be agreed upon by the interested parties and the Debtors.

Dated: December 6, 2012.

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

/s/ Steven K. Kortanek
Steven K. Kortanek (Del. Bar No. 3106)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone (302) 252-4320
Facsimile: (302) 252-4330
skortanek@wcsr.com

-AND-

RIEMER & BRAUNSTEIN LLP
Paul S. Samson (*pro hac vice*)
Donald E. Rothman (*pro hac vice*)
Steven E. Fox (*pro hac vice*)
Telephone (617) 523-9000
Facsimile (617) 880-3456
psamson@riemerlaw.com
drothman@riemerlaw.com
sfox@riemerlaw.com

*Attorneys for Silicon Valley Bank*

1506033.1

WCSR 7572060v1